IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILLIP WARD, *et al.*
    *Plaintiffs*,

v.

BRANCH BANKING & TRUST CO.,
*et al.*
    *Defendants*.

Civil Action No. ELH-13-01968

## MEMORANDUM OPINION

Plaintiffs Phillip Ward and Deidre B. Ward, who are self-represented, filed suit against defendants Branch Banking & Trust Co. ("BB&T") and Fisher Law Group, PLLC ("Fisher"), in connection with a mortgage loan plaintiffs obtained on July 25, 2005, in the sum of $356,000.[1] The mortgage loan was used to finance plaintiffs' purchase of real property located at 9710 Dubarry Street, Glendale, Maryland 20769 (the "Property"). During most of the relevant time period, BB&T was the servicer of the mortgage loan. A dispute arose because of BB&T's alleged refusal to disclose, and plaintiffs' resultant inability to determine, the identity of the current owner of the mortgage loan. Over time, the dispute developed into one centered on plaintiffs' failure to make their loan payments, BB&T's alleged failure to comply with various mortgage-related laws, and the nature of BB&T's interest in the Property.

Plaintiffs, frustrated by their inability to uncover the owner of the Note, and afraid they were the victims of mortgage fraud, eventually stopped making payments on the Note. In April 2013, BB&T, which ostensibly acquired a security interest in the loan, directed its substitute trustees, who were represented by Fisher, to initiate foreclosure proceedings in the Circuit Court for Prince George's County, Maryland. *See Fisher v. Ward*, Case No. CAE13-09860 (the

---

[1] Plaintiffs filed suit in the Circuit Court for Prince George's County. BB&T removed the case to this Court pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

"Foreclosure Action").  Several of plaintiffs' claims in this case relate to the authenticity *vel non* of the documents presented by defendants in the Foreclosure Action.

On June 6, 2013, after the Foreclosure Action was initiated, plaintiffs filed the underlying suit against defendants.  At the outset,  BB&T filed a motion to dismiss for insufficient service of process.  ECF 8.  Judge Alexander Williams, to whom the case was initially assigned, granted that motion in part, while also granting plaintiffs an extension of time to file an Amended Complaint and to effectuate service of process.  ECF 12.  Plaintiffs filed an Amended Complaint ("Am. Comp.," ECF 14) on September 9, 2013, to which numerous exhibits were appended.[2]  In the Amended Complaint, plaintiffs alleged Wrongful Foreclosure and Fraud (Count I); violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* (Count II); violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (Count III); unjust enrichment (Count IV); and violation of the Maryland Uniform Commercial Code (Count V).  In addition, they seek to enjoin defendants "from taking any further foreclosure action or asserting any further debt or economic interest" in the Property; the "awarding of Quiet Title to plaintiffs" with respect to the Property; as well as compensatory and punitive damages.  See ECF 14 at 12–13.

Both defendants filed motions to dismiss the Amended Complaint.  BB&T's Motion ("BB&T Motion) is at ECF 17, and is supported by a Memorandum of Law ("BB&T Memo," ECF 17-1), and several exhibits.  Fisher's motion, which includes its legal memorandum, ("Fisher Motion"), is at ECF 20, and is also supported by exhibits.  Plaintiffs submitted a

---

[2] Plaintiffs served the Amended Complaint on BB&T and Fisher on October 18, 2013 and November 4, 2013, respectively.  ECF 19.  Notably, Philip Ward signed the Amended Complaint "for *Pro Se Plaintiffs*."  However, because he is not an attorney, he is not allowed to represent his spouse.  *See* Local Rule 101.1.  Although BB&T points out this error, Memo at 1 n.1, BB&T has not moved to strike the Amended Complaint, nor does it seek any other relief.

combined opposition to both motions ("Opp.," ECF 24), supported by exhibits.[3]  Thereafter, on December 13, 2013, the case was reassigned to me.  BB&T subsequently filed a Reply (ECF 25).

In the meantime, on November 15, 2013, the Property was sold at public auction to Fannie Mae.  *See* ECF 20 at 2.  According to Fisher, the Foreclosure sale awaits ratification in State Court.  *Id.*

No hearing is necessary to resolve the defense motions.  *See* Local Rule 105.6.  For the reasons set forth below, the Fisher Motion will be granted and the BB&T Motion will be granted, in part, and denied, in part.  Because plaintiffs have already amended their Complaint once, and because further amendment would likely be futile, I will not grant plaintiffs leave to further amend their Amended Complaint.  However, if plaintiffs believe that amendment would not be futile, they may file a motion for leave to amend, explaining the nature of the proposed amendments and why the amendments would not be futile.  *See Anand v. Ocwen Loan Servicing, LLC*, _____ F.3d ____, No. 13-1900, slip op. at 10 (4th Cir. June 6, 2014) (noting that leave to amend may "'be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face.'") (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) (alteration in *Anand*)).

**Factual Background**

---

[3] Contemporaneously with their Opposition, plaintiffs filed a motion for extension of time to submit their opposition to the motions to dismiss, which was filed more than 17 days after the BB&T Motion.  ECF 23.  That motion will be granted.

The briefing does not paint a clear picture of the loan's history. But, it appears that on or about July 25, 2005, plaintiffs borrowed $356,000 from Southern Trust Mortgage, LLC ("Southern Trust") to finance their purchase of the Property. Am. Comp. ¶ 12. In connection with the mortgage loan, plaintiffs executed a promissory note on July 25, 2005 (the "Note"), in the amount of $356,000, in favor of Southern Trust. *See id.*; Note, Ex. A to BB&T Mot., ECF 17-2. On the same date, plaintiffs also executed a first-priority Deed of Trust for the same amount, encumbering the Property and securing payment of the Note. Am. Comp. ¶ 12; *see* Deed of Trust, Ex. B to BB&T Mot., ECF 17-3. The Deed of Trust is recorded in the land records of Prince George's County.

Soon thereafter, BB&T contacted plaintiffs to notify them that BB&T had become the servicer of the loan. Am. Comp. ¶ 13. From that point forward, plaintiffs made payments on the loan directly to BB&T. *Id.*

At some point, Southern Trust assigned the Note and the Deed of Trust to another entity, but the "when" and the "to whom" of that transaction remain unclear. Plaintiffs allege that they made several inquiries to BB&T regarding the identity of the new owner of the Note, but were repeatedly rebuffed.

Plaintiffs later learned "from well publicized news reports and common knowledge" that "many homeowners had been wrongfully scammed out of their homes by dishonest financial institutions and the self-serving lawyers who worked for them." *Id.* ¶ 14. Accordingly, plaintiffs contacted BB&T and "asked them to simply answer a few questions regarding the actual owner of [plaintiffs'] debt and the validity of [plaintiffs'] loan." *Id.* However, "instead of receiving simple answers regarding the actual financier of their debt[,] Plaintiffs received stonewalling and

no answers." *Id.*  According to plaintiffs, "[s]imple and reasonable questions asked were met with major resistance," and BB&T refused to disclose the owner of plaintiffs' debt. *Id.* ¶ 16.  As time went on, BB&T's "actions become more bizarre" and plaintiffs "started to rethink this blind trust they had for [BB&T] and started to doubt [BB&T's] veracity." *Id.* ¶ 17.

According to plaintiffs, as a result of "the financial crisis of 2008," which "was engendered in large part due to the securitization of mortgage notes," such notes were transformed into "investment vehicles" that were ultimately unenforceable. *Id.* ¶ 19.  They assert that, as a result of the government "bail out" of "big banks," many "toxic loans were paid off or extinguished as a matter of law." *Id.* ¶ 10.  Yet, "these financial institutions unscrupulously required payment again from the same homeowner who had been initially victimized by "the inappropriate loan practices" of these "financial institutions." *Id.*

Plaintiffs explain that, "after receiving no independent proof regarding who was the actual owner of their debt obligation," they stopped making their monthly mortgage payments and "demanded proof that the debt they owed – which they have never disputed – was in fact owed to the mysterious financier that Defendant BB&T represented as its servicer." *Id.* ¶ 21. Plaintiffs sent "multiple letters and made multiple calls to the Defendants demanding that they provide written documentation explaining who actually owned their loan and allegedly had a legal right to payments from them." *Id.* ¶ 22.  However, BB&T did not provide "any independent legal proof of who allegedly owns the note in question," *id.*, and the information BB&T did provide "tended to conflict" with other information BB&T had provided or with information BB&T provided to the Court in connection with the first motion to dismiss. *Id.* ¶ 23.

5

On April 12, 2013, BB&T's substitute trustees, represented by Fisher, instituted foreclosure proceedings in the Circuit Court for Prince George's County against plaintiffs. As noted, the Foreclosure Action is styled *Fisher v. Ward*, Case No. CAE13-09860. According to the circuit court's online docket, the Foreclosure Action remains open as the foreclosure sale awaits ratification.

A few months later, on June 6, 2013, plaintiffs filed suit this against BB&T and Fisher. They explain that they were "tired of the run around and misdirection" and were "convinced that they had been victims of fraud and misrepresentations concerning who actually had the right to enforce a debt obligation against them." Am. Comp. ¶ 26; *see* ECF 2.

The record contains several documents that plaintiffs allege are inconsistent with each other or otherwise suspect. For example, BB&T sent a letter to plaintiffs on July 30, 2012, informing them that BB&T was the servicer for the Federal National Mortgage Association ("Fannie Mae"), which was the owner of the loan. Am. Compl. ¶ 23; *see* ECF 14-2, BB&T Letter, Ex. B to Am. Comp. However, plaintiffs maintain that BB&T later "submit[ted] documentation to this Court stating that the note was indorsed over to Defendant BB&T from Southern Trust when according to their own previous letter to the Plaintiffs the [Note] should have been indorsed over to FANNIE MAE, the true owner . . . ." Am. Comp. ¶ 23; *see* Note, ECF 17-2 at 4. Moreover, plaintiffs question the authenticity of the indorsement of the Note to BB&T, pointing out that the stamp which purports to effectuate the indorsement appears on a blank page that contains no reference to the actual Note. Am. Comp. ¶ 25; *see* Note, ECF 17-2 at 4.

Plaintiffs also point out potential inconsistencies in a document purporting to be an Assignment of the Deed of Trust from Southern Trust to BB&T on March 28, 2012. *See* Assignment of Deed of Trust, Ex. D to Am. Comp., ECF 14-4.  According to the document, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Southern Trust, assigned the Note and the Deed of Trust to BB&T.  *Id.*  An individual named Chilton Morris signed the document on behalf of MERS.  *Id.*  However, according to plaintiffs, Morris "never worked for MERS and has always worked in the collections department for Defendant BB&T."  Am. Comp. ¶ 24.  In support of this allegation, plaintiffs attach a print-out of Morris's LinkedIn profile, on which Morris lists BB&T, not MERS, as his employer.  *See* ECF 14-4 at 4–5.

The Wards also take issue with a letter they received from Southern Trust on September 10, 2012.  In the letter, Southern Trust states that it sold the original loan more than 25 months prior, meaning that the sale occurred during or before 2010.  *See* Ex. F to Am. Comp., ECF 14-6.  However, BB&T stated in its first motion to dismiss that on March 28, 2012, "Southern sold and assigned all rights, title, and interests in Plaintiffs' mortgage loan to BB&T," and the documentation BB&T submitted in support of that claim also indicates that the assignment occurred on March 28, 2012.  *See* ECF 8-1 at 4; Assignment of Deed of Trust, ECF 14-4.

Additional facts will be included in the Discussion.

## Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  It provides that a

complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. But, the rule demands more than bald accusations or mere speculation. *Id.*; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing such a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010). However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555. Moreover, the court is not required to accept

legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385–86.

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012). "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201–02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (citation omitted).

A motion asserting failure of the complaint to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*,'" or in

9

other documents that are proper subjects of consideration under Rule 12(b)(6).   *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

Plaintiffs' allegations of fraud implicate the heightened pleading standard under Fed. R. Civ. P. 9(b).   *Cozzarelli*, 549 F.3d at 629.   The rule states: "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ."   Under the rule, a plaintiff alleging claims that sound in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"   *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted); *see also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).   In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'"   *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

As the Fourth Circuit has said, Fed. R. Civ. P. 9(b) serves several salutary purposes:

> "First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits.   A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery.   Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation."

*Harrison*, 176 F.3d at 784 (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1055, 1056–57 (S.D. Ga. 1990)).

By its terms, however, Rule 9(b) permits a general averment of aspects of fraud that relate to a defendant's state of mind.  It states, in part:  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'"  *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (quoting *Flynn v. Everything Yogurt*, Civ. No. HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)); *accord Gadson v. Supershuttle Int'l*, Civ. No. AW-10-1057, 2011 WL 1231311, at * 9 (D. Md. Mar. 30, 2011).  Thus, "[i]n cases involving concealment or omissions of material facts, . . . meeting Rule 9(b)'s particularity requirement will likely take a different form."  *Piotrowski v. Wells Fargo Bank, N.A.*, Civ. No. DKC 11-3758, 2013 WL 247549 (D. Md. Jan. 22, 2013) (citing *Shaw*, 973 F. Supp. at 552).  And, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Harrison*, 176 F.3d at 784.

Because plaintiffs are self-represented, their pleadings are "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).  "However, liberal construction does not absolve Plaintiff from pleading a plausible claim."  *Bey v. Shapiro Brown & Alt, LLP*, ___ F. Supp. 2d ___, 2014 WL 661586, at *3 (D. Md. Feb. 20, 2014).  As the Fourth Circuit has said, *Harris v. Angliker,* 955 F.2d 41, 41 (4th Cir. 1992):

11

It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty,* 347 F.2d 222, 223 (9th Cir.), *cert. denied,* 382 U.S. 966 (1965); *Holsey v. Collins,* 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied,* 475 U.S. 1088 (1986).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013). In considering a challenge to the adequacy of the Complaint, however, the court "may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Anand v. Ocwen Loan Servicing, LLC*, *supra*, slip op. at 4 (quoting *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Therefore, I may consider, among other documents, the Assignment of Deed of Trust attached to the Amended Complaint, and the Note and the Deed of Trust, attached to the BB&T Motion.[4] They are all integral to plaintiffs' claims, as they are legal instruments whose "'very existence'" has an operative effect on the rights at issue in the suit. *Id.* (citation omitted). Accordingly, they are a proper subject of consideration under Rule 12(b)(6), and there is no

---

[4] Plaintiffs attached a portion of the Deed of Trust to the Amended Complaint as Exhibit H.

dispute as to the authenticity of the copies of the Note and the Deed of Trust submitted by defendants. *See Stokes v. JPMorgan Chase Bank, NA*, Civil No. JFM 8:11-cv-02620, 2012 WL 527600, at *7 n.5 (D. Md. Feb. 16, 2012) (noting that "it is widely acknowledged" that courts can consider documents such as notes or deeds of trusts as matters of public record without converting a motion to dismiss into one for summary judgment).

### Discussion

*Fisher's Motion to Dismiss*

Fisher urges dismissal of all counts against it, claiming that the Amended Complaint "fails to state a cause of action upon which relief may be granted." Fisher Memo at 1. In particular, Fisher avers, *id.* at 3: "[N]owhere in the Amended Complaint do the Plaintiffs allege that [Fisher] has taken any action, or omitted to take any action which would in any way give rise to a claim for relief." I agree with Fisher.

The Amended Complaint mentions Fisher only in passing, making it difficult to determine which causes of action are asserted against Fisher. In fact, the only place where Fisher is explicitly mentioned is in the context of plaintiffs' FDCPA claim. For example, ¶ 32 of the Amended Complaint states: "[BB&T *and their attorneys* conducted themselves as debt collectors by filing false, deceptive, and misleading documentation . . . ." (Emphasis added). In any event, the allegations regarding Fisher are entirely conclusory; the Amended Complaint does not contain any specific factual allegations about acts or omissions by Fisher. And, even if the Amended Complaint contained enough factual matter to support an FDCPA claim, I would dismiss the claim against Fisher for the reasons discussed below regarding the FDCPA claim against BB&T. Accordingly, I will grant the Fisher Motion (ECF 20).

*BB&T's Motion to Dismiss*

As noted, the Amended Complaint contains five Counts: Wrongful Foreclosure and Fraud (Count I); violations of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* (Count II); violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* (Count III); unjust enrichment (Count IV); and violation of the Maryland Uniform Commercial Code (Count V).  I will address each in turn.

*Count I: Wrongful Foreclosure and Fraud*

In Count I, plaintiffs allege that defendants have committed "wrongful foreclosure and fraud."  The source of the cause of action is not entirely clear, as plaintiffs labeled Count I as both "wrongful foreclosure" and "fraud," and they also allege violations of Maryland Code (2010 Repl. Vol., 2013 Supp.), §§ 7-105.1–7-105.2 of the Real Property Article ("R.P."), which set forth procedural requirements in foreclosure sales.  In any event, the essence of this claim is that defendants submitted falsified and invalid documents in the Foreclosure Action.

No matter how Count I is construed, I must abstain from deciding plaintiffs' claim, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny.  The *Younger* abstention doctrine "requires a federal court to abstain from interfering in state proceedings, even if jurisdiction exists," if there is: "(1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit."  *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008).  "'*Younger* is not merely a principle of abstention; rather, the case sets forth a mandatory rule of equitable restraint, requiring the dismissal of a federal action.'"

*Williams v. Lubin*, 516 F. Supp. 2d 535, 539 (D. Md. 2007) (quoting *Nivens v. Gilchrist*, 444 F.3d 237, 247 (4th Cir. 2006)).

All three elements of the *Younger* test are satisfied here.  Because the Property is located in Maryland, the Maryland foreclosure procedures apply.  *See* R.P. §§ 7-105-1 *et seq.*; Md. Rules 14-201 *et seq*.  As discussed, foreclosure proceedings are ongoing in the Circuit Court for Prince George's County, satisfying the first element.  The second element is satisfied because Maryland has a substantial interest in its own property law.  *See Harper v. Pub. Serv. Comm'n of W. VA.*, 396 F.3d 348, 352 (4th Cir. 2005) ("[P]roperty law concerns, such as land use and zoning questions, are frequently 'important' state interests justifying *Younger* abstention."); *Fisher v. Fed. Nat. Mortgage Ass'n*, 360 F. Supp. 207, 210 (D. Md. 1973).  Finally, plaintiffs have had ample opportunity to dispute the authenticity of the documents relied upon by BB&T in the context of the Foreclosure Action.  Indeed, the docket of the Foreclosure Action shows that plaintiffs have filed multiple motions seeking to enjoin or stay a foreclosure sale.  *See* Doc. No. 9 in Foreclosure Action; Doc. No. 22 in Foreclosure Action.  *See*, *e.g.*, Md. Rule 14-211; *see also Bates v. Cohn*, 417 Md. 309, 329, 9 A.3d 846, 858 (2010) ("Rule 14-211 allows homeowners to prevent a foreclosure sale by challenging, among other things, the 'right of the [lender] to foreclose . . . .'  Md. Rule 14-211(a)(3)(B).").

To be sure, in recent years, the State of Maryland has made substantial changes to the rules governing foreclosures.  *See Attorney Grievance Comm'n of Maryland v. Chapman*, 430 Md. 238, 279 n.1, 60 A.3d 25, 50 n.1 (2013) (McDonald, J., concurring) ("Less scrupulous providers have engaged in abuses that prompted the Legislature to enact various protections for homeowners.  *See* Chapters 5, 6, Laws of Maryland 2008; Chapter 509, Laws of Maryland

15

2005."). Nevertheless, it would be improper for this Court to make a determination about the authenticity of documents that have already been, or will be, examined by the Circuit Court for Prince George's County. Therefore, I am required by *Younger* to dismiss plaintiffs' claim that BB&T has relied on falsified and invalid documents in the Foreclosure Action.

Alternatively, to the extent plaintiffs seek to quiet title to the Property, their claim is barred by R.P. § 14–108(a), which only allows a quiet title action "if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim . . . ." *Id.*; *see Anand v. Ocwen Loan Servicing, LLC, et al.*, No 13-900, slip op. at 3 n.1 (4th Cir. May 14, 2014) (addressing Maryland law and stating: "[A] pending foreclosure proceeding . . . would bar the current quiet title claim."); *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (dismissing quiet title claim when foreclosure action was pending in state court); *see also Braxton v. Citibank, N.A.*, 2011 WL 4368011, at *2 (D. Md. Sept. 15, 2011) ("[A] quiet title action cannot be maintained in Maryland while an underlying foreclosure suit is pending.").

### Count II: Truth in Lending Act

In Count II, plaintiffs allege that BB&T violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* The TILA was passed in 1968 to "'assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.'" *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 364–65 (1973) (quoting 15 U.S.C. § 1601(a)). Among other things, the TILA "requires lenders 'clearly and conspicuously' to make a number of disclosures to borrowers, including the disclosure of the borrowers' right to rescind a consumer credit

16

transaction." *Watkins v. SunTrust Mortgage, Inc.*, 663 F.3d 232, 234 (4th Cir. 2011) (quoting 15 U.S.C. §§ 1601(a)).   More recently, Congress passed the Helping Families Save Their Homes Act of 2009, Pub. L. No. 111–22, 123 Stat. 1632, which amended various sections of the TILA. As relevant here, the Act provides: "[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer."   15 U.S.C. § 1641(g)(1).

Plaintiffs allege that they never received notice from BB&T or any other party when plaintiffs' loan was transferred or assigned from Southern Trust, in violation of 15 U.S.C. § 1641(g)(1).   Indeed, plaintiffs allege that the question of who currently owns their loan "is still not definitively answered."   Am. Comp. ¶ 31.   Notwithstanding the lack of clarity regarding ownership of the loan, plaintiffs suggest that BB&T acquired the loan at some point and failed to make the requisite disclosures.

BB&T interposes two objections to plaintiffs' TILA claim.   First, BB&T contends that "BB&T is alleged to be only a servicer of the subject mortgage loan," and "the requirements of TILA apply only to the original creditor and assignees of that creditor."   BB&T Memo at 10–11. Thus, BB&T maintains that it "cannot be held liable under the TILA."   *Id.*   Second, BB&T claims that plaintiffs' TILA claim is time-barred.   *Id.* at 12–14.

As a legal matter, it is true that TILA's disclosure requirements apply only to creditors and their assignees.   In particular, "[t]he only parties who can be liable for [TILA] violations are the original creditor, 15 U.S.C. § 1640, and assignees of that creditor, 15 U.S.C. § 1641."   *Chow v. Aegis Mortgage Corp.*, 286 F. Supp. 2d 956, 959 (N.D. Ill. 2003).   As for servicers, the TILA

expressly provides that a "servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee . . . unless the servicer is or was the owner of the obligation."  15 U.S.C. § 1641(f)(1); *see Sall v. Wells Fargo Bank, N.A.*, 2012 WL 5463027, at *4 (D. Md. Nov. 7, 2012) ("Generally, a servicer of a mortgage loan that is not an assignee or owner of the loan has no liability for alleged violations of TILA." (internal quotation marks omitted)).  Thus, only creditors and their assignees—and not mere servicers lacking ownership interest in the loan—may be held liable under the TILA.

Accordingly, the relevant factual inquiry is whether plaintiffs have adequately alleged that BB&T is a creditor or assignee of the loan, thereby subjecting it to the TILA.  Keeping in mind the liberal construction standard of *pro se* pleadings mandated by *Pardus*, 551 U.S. at 94, the Amended Complaint satisfactorily alleges that BB&T is, was, or may be the owner of plaintiffs' mortgage loan, and it sets forth "enough factual matter (taken as true)" to make the allegation "plausible."  *Twombly*, 550 U.S. at 556, 570.  In the Amended Complaint, plaintiffs accurately note that the TILA requires "[t]he *purchaser or assignee*[] that acquires the loan [to] provide the required disclosures."  Am. Comp. ¶ 31 (emphasis added).  Plaintiffs then allege that the TILA "was clearly violated [by BB&T] because Plaintiffs have had to jump over unnecessary hurdles just to learn who was actually the party in interest in this matter."  Am. Comp. ¶ 31. Thus, plaintiffs acknowledge that the TILA imposes liability only on creditors and assignees, and they then allege that BB&T violated the TILA.  This allegation, construed liberally and taken as true, suggests that BB&T is or was the owner of the loan.

Moreover, plausibility of the allegation is strengthened by the exhibits attached to the Amended Complaint.  For example, plaintiffs included what appears to be an assignment of the

18

Note from Southern Trust to BB&T.  *See* Ex. C to Am. Comp., ECF 14-3; Note, ECF 17-2 at 4. This same document was previously submitted to the Court by BB&T in connection with BB&T's first motion to dismiss, and BB&T does not dispute its authenticity.  *See* ECF 8-2.  If, as appears to be the case, the Note was assigned from Southern Trust to BB&T, then BB&T would be the owner of the Note and, as a result, an assignee potentially subject to liability under the TILA.  And, notably, although BB&T claims that plaintiffs failed to allege that BB&T was a creditor or assignee, BB&T never actually disclaims ownership of the loan.

To be sure, the record is replete with contradictory information regarding ownership of the loan and the date on which any change in ownership took place.  For example, BB&T states in its Memo that "Mortgage Electronic Registration Systems, Inc., as nominee for Southern [Trust], assigned the Deed of Trust and Note to BB&T" on March 28, 2012.  Memo at 3. However, Exhibit F to the Amended Complaint is a letter dated September 10, 2012, sent by Southern Trust to Mr. Ward.  The letter advises Mr. Ward that Southern Trust sold plaintiffs' loan more than 25 months prior to the date of the letter, which seems to be inconsistent with BB&T's representation to the Court that Southern Trust assigned the loan to BB&T in March 2012.  In other words, if Southern Trust assigned the loan to another entity in 2010, it presumably could not have also assigned the loan to BB&T in 2012.  And, to add to the confusion, on July 30, 2012, BB&T apparently sent a letter informing plaintiffs that the Federal National Mortgage Association ("Fannie Mae") was the owner of the loan.  *See* Ex. B to Am. Comp., ECF 14-2.

Needless to say, the chain of ownership of the loan is not entirely clear.  The lack of clarity makes several factual scenarios plausible, one of which is that BB&T became the owner

of the loan at some point, subjecting BB&T to the TILA's disclosure requirements.  Because such a claim is plausible, and because the *pro se* plaintiffs have alleged that they did not receive the disclosures mandated by the TILA, plaintiffs have adequately alleged that BB&T violated the TILA.

BB&T also argues that plaintiffs' TILA claim is time-barred, under both the one-year statute of limitations for monetary damages and the three-year limitation on rescission under the TILA.  *Id.* at 12–14.  Pursuant to 15 U.S.C. § 1640(e), any action for monetary damages under TILA can "be brought . . . within one year from the date of the occurrence of the violation."  As noted, the alleged violation here is BB&T's failure to notify plaintiffs, within 30 days of the alleged assignment, that it had been assigned the Note.  Thus, plaintiffs' cause of action accrued at the expiration of the 30-day period.  *See* 15 U.S.C. § 1641(g).  The exact date of the alleged assignment is unclear (and immaterial at this stage), but according to BB&T's Memo, the Note was transferred from Southern Trust to BB&T on March 28, 2012.  Memo at 3.  Thirty days after March 28, 2012 is April 27, 2012; thus, the statute of limitations on damages claims expired on April 27, 2013.  Plaintiffs did not file their suit until June 6, 2013.  *See* ECF 2.

However, several courts, including courts in this district, have held that the equitable doctrine of fraudulent concealment can toll the statute of limitations for monetary damages claims under TILA.  *See Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 798 (D. Md. 1998) (holding that the doctrine of fraudulent concealment can toll the statute of limitations established in 15 U.S.C. § 1640(e) for monetary damages claims under TILA); *Elman v. JP Morgan Chase Bank, NA*, 2010 WL 2813351, at *2 (D. Md. July 13, 2010); *see also Espejo v. George Mason Mortgage, LLC*, 2010 WL 447009, at *6 (E.D. Va. Feb. 2, 2010) (identifying

20

four different federal appellate courts that have held that the statute of limitations for monetary damages under TILA is subject to equitable tolling).

As the Court of Appeals for the Fourth Circuit has explained, "the fraudulent concealment doctrine tolls the statute of limitations 'until the plaintiff in the exercise of reasonable diligence discovered or should have discovered the alleged fraud or concealment.'" *Browning v. Tiger's Eye Benefits Consulting*, 313 F. App'x 656, 663 (4th Cir. 2009) (citation omitted).  In order to justify equitable tolling on the basis of fraudulent concealment, a plaintiff must prove "(i) that the party asserting the statute of limitations concealed facts that are the basis of the plaintiff's claim; (ii) that the plaintiff failed to discover those facts within the statutory period; and (iii) that the plaintiff failed to do so despite the exercise of due diligence."  *Roach v. Option One Mortgage Corp.*, 598 F. Supp. 2d 741, 751–52 (E.D. Va. 2009) (internal quotation marks and alteration omitted), *aff'd*, 332 F. App'x 113 (4th Cir. 2009).

At this stage of the proceedings, plaintiffs have alleged sufficient facts to receive the benefit of equitable tolling.  The first element is satisfied because plaintiffs allege that they sent repeated inquiries to BB&T about who owned plaintiffs' loan, only to be met with "stonewalling and no answers."  Am. Comp ¶ 14; *see id.* ¶¶ 15–16, 21–23.  If, as plaintiffs allege, BB&T itself owns or owned plaintiffs' loan, then BB&T's alleged refusal to provide that information to plaintiffs, despite the requirements of the TILA, would amount to concealment of the facts that now form the basis of plaintiffs' TILA claim.  The second element is satisfied because plaintiffs allege that they *still* do not know who owns their loan.  The third element is satisfied because plaintiffs allege that they made repeated efforts to discover who owns their loan, thereby satisfying the requirement of diligence by plaintiffs in seeking to uncover the withheld

information. Thus, plaintiffs' allegations, which I must assume to be true in the present posture of the case, entitle them to proceed on their TILA claim, despite the fact that more than one year has passed since the alleged violation. This, of course, does not guarantee that the Court ultimately will hold that the statute of limitations was tolled. Rather, "[w]hat this holding does is give the [plaintiffs] a chance to prove that the requirements for equitable tolling are met." *Kerby*, 992 F. Supp. at 798.

BB&T also argues that, to the extent plaintiffs seek the remedy of rescission, the TILA's three-year limitation on such a remedy has expired. I need not address this argument at this time. As an initial matter, it is unclear whether plaintiffs even seek the remedy of rescission, as the Amended Complaint refers broadly to injunctive relief and "awarding of Quiet Title," without any explicit mention of rescission. Am. Comp. ¶ 37a–b. In any event, plaintiffs' TILA claim for monetary damages will proceed regardless of whether rescission is also available to them, so a ruling on whether rescission is available can be decided, if necessary, in the context of summary judgment or trial.

For the foregoing reasons, I will deny BB&T's motion to dismiss Count II.

*Count III: Fair Debt Collection Practices Act*

Plaintiffs allege in Count III that BB&T violated the FDCPA, which "protects consumers from abusive and deceptive practices by debt collectors, and protects non-abusive debt collectors from competitive disadvantage." *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996); *see* 15 U.S.C. § 1692e. To establish an FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an

22

act or omission prohibited by the FDCPA." *Boosahda v. Providence Dane LLC*, 462 F. App'x

331, 333 n.3 (4th Cir. 2012) (quotation marks omitted).

BB&T argues that it is not a "debt collector" within the meaning of the FDCPA and that,

in any event, plaintiffs have failed to allege a violation of the FDCPA by BB&T. *See* BB&T

Memo at 14–17. I agree with BB&T that plaintiffs have failed to allege a violation of the

FDCPA, and I therefore will not address whether BB&T is a "debt collector."[5]

Although the precise nature of the alleged violation of the FDCPA is unclear, plaintiffs

cite 15 U.S.C. § 1692f(6), which prohibits:

> (6) Taking or threatening to take any nonjudicial action to effect dispossession or
> disablement of property if--
> > (A) there is no present right to possession of the property claimed as
> > collateral through an enforceable security interest;
> > (B) there is no present intention to take possession of the property; or
> > (C) the property is exempt by law from such dispossession or disablement.

Plaintiffs provide no factual basis to support any liability on the part of BB&T for

violation of § 1692f(6). Indeed, the Amended Complaint contains no more than the conclusory

legal boilerplate that BB&T "fil[ed] false, deceptive, misleading documentation to make their

---

[5] The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The term excludes, *id.* § 1692(a)(6)(F):

> any person collecting or attempting to collect any debt owed or due or asserted to
> be owed or due another to the extent such activity (i) is incidental to a bona fide
> fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which
> was originated by such person; (iii) concerns a debt which was not in default at
> the time it was obtained by such person; or (iv) concerns a debt obtained by such
> person as a secured party in a commercial credit transaction involving the
> creditor.

actions after the fact seem in compliance with applicable law."  Am. Comp. ¶ 32; *see Iqbal*, 556 U.S. at 680 ("[Conclusory allegations] are not entitled to the assumption of truth.").  Plaintiffs certainly do not offer any facts that would give rise to liability under 15 U.S.C. § 1692f(6)(B) or (C):  In particular, nothing in the Amended Complaint suggests that BB&T "threaten[ed] to take . . . nonjudicial action" when it had "no present intention to take possession of the property," *see* 15 U.S.C. § 1692f(6)(B), and plaintiffs do not allege that the Property is "exempt by law" from "dispossession or disablement."  *Id*. § 1692f(6)(C).

It appears most likely that plaintiffs are attempting to allege that BB&T initiated foreclosure proceedings, or threatened to do so, without the "present right to possession of the [Property] . . . through an enforceable security interest," in violation of 15 U.S.C. § 1692f(6)(A). If this is indeed what plaintiffs sought to allege, then Count III must be dismissed for the same reason as Count I: the enforceability of BB&T's security interest in the Property is an issue that must be determined in the Foreclosure Action.  *See Younger*, 401 U.S. 37.

For the foregoing reasons, I will dismiss Count III of the Amended Complaint.

*Count IV: Unjust Enrichment*

In Count IV, plaintiffs allege that "BB&T will be unjustly enriched if a wrongful foreclosure is allowed."  Am Comp. ¶ 34.  As an initial matter, this claim appears to be duplicative of Count I, which will be dismissed under the *Younger* abstention doctrine.  In any event, the claim is not ripe.

Ripeness "'concerns the appropriate timing of judicial intervention.'" *Cooksey*, 721 F.3d at 240 (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)).  The ripeness doctrine, which overlaps with standing, is "drawn both from Article III limitations on

judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotations omitted). Generally speaking, "a case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Doe v. Virginia Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (internal quotation marks omitted).  On the other hand, a claim "should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Id.* (internal quotation marks omitted).

Here, it is evident from the face of the Amended Complaint that plaintiffs' unjust enrichment claim is not ripe.  Plaintiffs do not allege that BB&T has been unjustly enriched; rather, they allege that BB&T *will be* unjustly enriched in the future *if* "a wrongful foreclosure is allowed." Am. Comp. ¶ 34.  Clearly, this claim is "dependent on future uncertainties" and is therefore unfit for judicial resolution at this time.

Plaintiffs also allege that "BB&T may have already [been] unjustly enriched based on insurance claims potentially received related to Plaintiffs['] alleged default." *Id.* ¶ 35.  This claim is far too speculative to state a claim for relief.  Plaintiffs allege no facts to flesh out the substance of this inscrutable claim and, accordingly, it does "not permit the court to infer more than the mere possibility of misconduct," such that the claim may survive the motion to dismiss. *See Iqbal,* 556 U.S. at 679; *Twombly,* 550 U.S. at 556.

For the foregoing reasons, Count IV of the Amended Complaint will be dismissed.

*Count V: Maryland Uniform Commercial Code*

In Count V of the Amended Complaint, plaintiffs allege that BB&T violated sections 3-407 and 3-203 of the Maryland Uniform Commercial Code.  Maryland's version of the Uniform

25

Commercial Code is codified in the Commercial Law Article ("C.L.") of the Maryland Code (2013 Repl. Vol.).  C.L. § 3-407 deals with alterations of negotiable instruments.  An alteration is defined as "(i) an unauthorized change in an instrument that purports to modify in any respect the obligation of a party, or (ii) an unauthorized addition of words or numbers or other change to an incomplete instrument relating to the obligation of a party."  C.L. § 3-407(a).  Generally speaking, "an alteration fraudulently made discharges a party whose obligation is affected by the alteration."  *Id.* § 3-407(b).  C.L. 3-203 provides that a transferee of a negotiable instrument "cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument."

Plaintiffs claim that BB&T violated these provisions by "alter[ing] documents [and] misrepresent[ing] who they are on official documents."  Am. Comp. ¶ 37.  This allegation is duplicative of the allegations in Count I, which alleged that defendants submitted falsified documents in the Foreclosure Action.  Accordingly, as with Count I, I must abstain from ruling on the claim, pursuant to the *Younger* abstention doctrine.  *See* 401 U.S. 37.  The authenticity of the documents submitted to the Court in the Foreclosure Action is an issue that must be determined by the circuit court in the Foreclosure Action.  Therefore, Count V will be dismissed.

## Conclusion

For the foregoing reasons, the Fisher Motion will be granted and the BB&T Motion will be granted, in part, and denied, in part.  As noted, I will not presently grant plaintiffs leave to further amend their Amended Complaint, but plaintiffs may file a motion for leave to amend within 21 days of the date of this Memorandum, explaining the nature of the proposed amendments and why the amendments would not be futile.  An Order follows.

Date: June 13, 2014                           _____/s/_____
                                              Ellen Lipton Hollander
                                              United States District Judge