IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILLIP & DEIRDRE WARD,

    *Plaintiffs,*

    v.                        Civil Action No.: ELH-13-1968

BRANCH BANKING & TRUST,

    *Defendant.*

## MEMORANDUM OPINION

Phillip and Deirdre Ward, the self-represented plaintiffs, filed suit in July 2013 against defendants Branch Banking & Trust ("BB&T") and the Fisher Law Group, PLLC, alleging five counts related to defendants' attempt to foreclose plaintiffs' home in Glenn Dale, Maryland (the "Property"). *See* ECF 2.[1] Plaintiffs filed an Amended Complaint in September 2013. ECF 14. Plaintiffs' claims against the Fisher Law Group were dismissed in June 2014, along with four of the five counts alleged against BB&T. *See* ECF 28 (Memorandum); ECF 29 (Order).[2] Count II of the Amended Complaint remains, alleging that BB&T violated the Truth in Lending Act

---

[1] Plaintiff filed suit in the Circuit Court for Prince George's County and BB&T removed the case to this Court. ECF 1 (Notice of Removal). The case was initially assigned to Judge Alexander Williams, Jr., was reassigned to Judge Catherine Blake in November 2013, and then reassigned to me in December 2013.

[2] The dismissals were without prejudice. But, I stated that if plaintiffs did not move to amend the Complaint within twenty-one days from the date of the Order, the dismissal would be with prejudice. *See* ECF 29. As to BB&T, plaintiffs filed a Motion to Amend the Complaint one day late, and failed to include a copy of the proposed Second Amended Complaint. *See* ECF 33. At the request of the Court, plaintiffs filed a proposed Second Amended Complaint as to BB&T. *See* ECF 39 (Order); ECF 43 (proposed Second Amended Complaint). However, I denied plaintiffs' Motion to Amend, because three of the proposed counts are barred by collateral estoppel, and the final proposed count fails to state a claim upon which relief could be granted. *See* ECF 61 (Memorandum); ECF 62 (Order).

("TILA"), 15 U.S.C. §§ 1601 *et seq.*, by failing to disclose the sale or transfer of plaintiffs' mortgage loan within 30 days after BB&T acquired the loan.  ECF 14 ¶¶ 30-31.

Now pending is BB&T's Motion for Summary Judgment with respect to Count II.  ECF 51 ("Motion").  A Scheduling Order was entered in this case in June 2014 (ECF 30), but defendant filed its Motion before the parties engaged in any discovery.  In its memorandum supporting the Motion (ECF 51-1, "Memo"), defendant argues it is entitled to summary judgment because it acquired plaintiffs' loan before the relevant TILA provision went into effect.  ECF 51-1 at 6-8.  Defendant submitted five exhibits in support of its Motion, including a Declaration by Patrick Carper, a Vice President at BB&T, in which he attests to the date BB&T purchased plaintiffs' loan from plaintiffs' original creditor.  *See* ECF 51-3 ("Carper Decl.") ¶ 7.

Plaintiffs oppose the Motion.  ECF 56.  They argue that there is a genuine dispute of material fact as to when BB&T purchased plaintiffs' loan.  *Id*. at 1-2.[3]  Plaintiffs also submitted a memorandum of law, ECF 56-1 ("Opposition"); an Affidavit of plaintiff Phillip Ward, ECF 56-2 ("Ward Aff."); and ten other exhibits.  *See* ECF 56-3 through ECF 56-13.  In addition, they challenge the admissibility of Carper's Declaration; assert that the Declaration is defective because it is not based on personal knowledge; and argue that it is a "sham affidavit" because it "contradict[s] [a] prior sworn statement" submitted by defendant.  ECF 56-1 at 16-18.  Moreover, in their Opposition and in Mr. Ward's Affidavit, plaintiffs ask the Court to permit

_____

[3] Plaintiffs also argue that "BB&T has failed to make several required TILA disclosures including, but not limited to, required disclosures by creditors, disclosures regarding liability of assignees, disclosures concerning limitation after default, and disclosures of a right of rescission." ECF 56-1 at 5.  However, plaintiffs' Amended Complaint identifies only one TILA violation, namely, defendant's failure to notify plaintiffs when it purchased their loan.  *See* ECF 14 ¶ 31.  Thus, although plaintiffs assert that BB&T has committed other TILA violations, plaintiffs have so far failed to identify those additional violations with specificity.

discovery concerning the question, *inter alia*, of when BB&T acquired their loan.  *See id.* at 9-10, 15-16; ECF 56-2 ¶ 12.

The Motion has been fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I will deny the Motion.

## I.  Factual Background

It is undisputed that plaintiffs purchased the Property in July 2005, with a loan from Southern Trust Mortgage, LLC ("Southern"), secured by the Property.  *See* ECF 51-4 at 2-4 (Copy of Note executed by plaintiffs on July 25, 2005, listing Southern as lender) ("Note"); ECF 51-5 at 2-20 (Deed of Trust executed by plaintiffs on July 25, 2005) ("Deed"); *see also* Ward Aff., ECF 56-2 ¶ 3; Carper Decl., ECF 51-3 ¶¶ 4-5.  As stated, plaintiffs allege that BB&T acquired their loan at some point.  ECF 14 ¶ 31.  BB&T agrees that it acquired plaintiffs' loan, but the parties dispute when the loan was acquired by BB&T.

BB&T contends that it purchased plaintiffs' loan from Southern on August 17, 2005. ECF 51-1 at 4.  It relies solely on the Carper Declaration in support of this date.  *Id*.  In his Declaration, Carper states that his job duties as Vice President "include managing BB&T's mortgage foreclosure process which involves managing bank owned and investor loan foreclosure portfolios; managing foreclosure specialists who work files assigned to foreclosure attorneys; review investor loans serviced by BB&T that have gone to foreclosure and attending mediations/hearings as needed to represent BB&T in various legal matters related to the foreclosure of a property."  ECF 51-3 ¶ 1.  He avers: "The following statements are based both on my personal knowledge and the information I have acquired pursuant to my duties as Vice President."  *Id*.  Carper further explains:  "I researched and reviewed the documents in BB&T's

possession with respect to plaintiffs' loan and the statements in this Declaration are based upon my research and review of documents maintained by BB&T in the ordinary course of its business." *Id*. ¶ 3.

In relevant part, Carper also states, *id.* ¶ 7: "BB&T purchased Plaintiffs' Note from Southern on August 17, 2005." He adds: "On the same date, BB&T acquired from Southern the servicing rights on Plaintiffs' loan." *Id*. BB&T also asserts that the "transfer [from Southern] is reflected by a special endorsement on the Note to BB&T." ECF 51-1 at 4. It submitted a copy of the special endorsement, ECF 51-4 at 5, which, according to Carper, is appended to the copy of the Note of July 25, 2005, kept in BB&T's business records. ECF 51-3 ¶ 4.

As indicated, plaintiffs executed the Note. ECF 51-4 at 2-4. The endorsement appears to consist of two stamp prints on a blank page. *Id*. at 5. The endorsement also appears to be signed by Christine E. Hayes. *Id*. However, it does not reflect a date for the endorsement. *Id*. Nor has BB&T provided any explanation as to the identity or role of Christine E. Hayes, such as the company for which she worked, or when she worked there. The Court knows only her title, *i.e.*, Executive Assistant, as shown on the endorsement. *Id*. The endorsement states, *id*.:

> Payable without recourse to
> BRANCH BANKING
> AND TRUST COMPANY
> SOUTHERN TRUST MORTGAGE, LLC
>
> _____[signature ]_____
> CHRISTINE E. HAYES
> EXECUTIVE ASSISTANT

In response, plaintiffs correctly observe that in prior submissions to the Court, BB&T represented that it acquired plaintiffs' Note on March 28, 2012. ECF 56-1 at 8. Moreover,

plaintiffs point out that BB&T relied in part on what appears to be the very same endorsement in support of those representations.  *Id.*

In particular, prior to filing the Motion, BB&T had filed two motions to dismiss.  *See* ECF 8 ("First MTD"); ECF 17 ("Second MTD").  In the memorandum supporting BB&T's First MTD, BB&T stated:  "On March 28, 2012, Southern sold and assigned all rights, title and interests in Plaintiff's mortgage loan to BB&T."  ECF 8-1 at 4. BB&T cited to plaintiffs' Complaint, and to a document submitted as Exhibit C to BB&T's First MTD.  *Id.*  The paragraph BB&T cited in plaintiffs' Complaint states:  "Upon information and belief [Southern] sold the loan on 9-1-2005 and has no interest in property … ."  *Id.* (citing ECF 2 ¶ 11).  The exhibit BB&T cited is titled "Assignment of Deed of Trust".  *Id.* (citing ECF 8-4 ("Assignment")).  The Assignment states, ECF 8-4 at 1 (emphasis added):

> FOR VALUE RECEIVED, the undersigned *Mortgage Electronic Registration Systems, Inc. ("MERS"), as Nominee for [Southern]*, Assignor, *hereby grants, assigns and transfers* without recourse, representation or warranty *unto Branch Banking and Trust Company that certain Deed of Trust dated July 25, 2005* and recorded October 4, 2005 … among the Land Records of Prince George's County, Maryland, granted by [plaintiffs], and concerning certain real property …, to secure repayment of an indebtedness evidenced by a Deed of Trust Note dated July 25, 2005 …, executed by said grantor(s), payable to the order of [Southern], *together with the note therein described or referred to*, the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

The Assignment clearly indicates that a nominee for Southern—specifically, Mortgage Electronic Registration Systems, or "MERS"—assigned plaintiffs' Deed to BB&T on March 28, 2012. ECF 8-4 at 1-2.  It is not clear from the text of the Assignment, as emphasized in the quote above, whether the Note was also assigned to BB&T on that date.  *Id.*  BB&T also included a

copy of the Note as Exhibit A to its First MTD, which included what appears to be a copy of the same endorsement from Southern to BB&T, quoted *supra*. *See* ECF 8-2 at 4.

In BB&T's memorandum in support of its Second MTD, it stated: "On March 28, 2012, Mortgage Electronic Registration Systems, Inc., as nominee for Southern, assigned the Deed of Trust *and Note* to BB&T." ECF 17-1 at 3 (emphasis added). BB&T cited the same paragraph of plaintiffs' Complaint that it cited in its memorandum supporting its First MTD—even though plaintiffs filed an Amended Complaint in the interim—and to another copy of the Assignment. *See* ECF 17-1 at 3 (citing ECF 2 ¶ 11 and ECF 17-4).

Additional facts are included in the Discussion.

## II.  Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*. at 248.  There is a genuine dispute as to a fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, it must support its factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … , admissions, interrogatory answers, or other materials … ." Notably, "[w]hen affidavits are used to support or oppose a summary judgment motion, they 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' These requirements are mandatory." *In re French*, 499 F.3d 345, 358 (4th Cir. 2007) (Whitney, J., concurring) (quoting former Fed. R. Civ. P. 56(e), now codified without substantive change in Fed. R. Civ. P. 56(c)(4)).

Where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, as just discussed, or "the burden on the moving party may [also] be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).   In such cases, the nonmoving party "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (citation omitted), *cert. denied*, 541 U.S. 1042 (2004).

The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002);

*see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See, e.g., Boone v. Stallings*, 583 F. App'x. 174 (4th Cir. 2014) (per curiam). Summary judgment is appropriate only if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011); *see also Celotex Corp.*, 477 U.S. at 322. The evidence cannot fairly be considered "one-sided" where the other side has had no chance to obtain evidence held only by the moving party. Put another way, "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002) (discussing affidavit requirement of former Rule 56(f)). And, "[i]n response, the district court may defer consideration of the summary judgment motion, deny the

motion, or 'issue any other appropriate order.'" *McCray*, 741 F.3d at 483 (quoting Fed. R. Civ. P. 56(d)).

### III. Discussion

As stated, plaintiffs allege that BB&T violated TILA when it failed to provide disclosures required by TILA after it acquired plaintiffs' mortgage loan.  "In adopting TILA, Congress declared that '[i]t is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.' 15 U.S.C. § 1601(a)."  *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 275-76 (4th Cir. 2012).

In relevant part, TILA states, 15 U.S.C. § 1641(g) (2012):

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

> (A) the identity, address, telephone number of the new creditor;
>
> (B) the date of transfer;
>
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
>
> (D) the location of the place where transfer of ownership of the debt is recorded; and
>
> (E) any other relevant information regarding the new creditor.

(2) Definition

As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

Section 1641(g) was enacted as an amendment to TILA in 2009, as part of the Helping Families Save Their Homes Act of 2009. *See* Pub. L. No. 111-22, § 404, 123 Stat. 1632, 1649 (titled "Notification of Sale or Transfer of Mortgage Loans", codified at 15 U.S.C. § 1641(g)) (approved May 20, 2009). Judges in other federal district courts have consistently held that the provision does not apply retroactively—that is, it applies only to transfers that occurred after the effective date of the amendment, May 20, 2009. *See*, *e.g.*, *Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 353 (E.D. Va. 2011) (citing *Angelini v. Bank of Am.*, 11–3011, 2011 WL 2433485, at *5 (D. Or. Apr. 27, 2011)); *accord*, *e.g.*, *Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12CV2106-WQH-KSC, 2015 WL 3966119, at *4 (S.D. Cal. June 30, 2015); *Craig v. Bank of New York Mellon Corp.*, No. 10-CV-4438 SLT RML, 2014 WL 1347225, at *10 (E.D.N.Y. Mar. 31, 2014); *O'Dell v. Deutsche Bank Nat. Trust Co.*, 12-CV-985 JCC/IDD, 2013 WL 2389874, at *13 (E.D. Va. May 30, 2013) ("As 15 U.S.C. § 1641(g) had not yet been implemented, there would have been no need [in 2011] for notice under that TILA provision."). Accordingly, in order for BB&T to have violated § 1641(g) with respect to plaintiffs' loan, BB&T must have acquired the loan after May 20, 2009.

As a preliminary matter, neither party has discussed who bears the burden of proof on this issue at trial. *See generally* Memo, ECF 51-1; Opposition, ECF 56-1. In BB&T's Reply, it asserts that "Plaintiffs have the burden of proof" with respect to their TILA claim generally, but defendant cites no authority for that contention, nor does it address whether, *e.g.*, the question *sub judice* may be in the nature of an affirmative defense. *Cf. Gardner v. Montgomery Cnty. Teachers Fed. Credit Union*, 864 F. Supp. 2d 410, 416 (D. Md. 2012) ("The Court, therefore, finds that the general rule in TILA cases is that once a debtor makes a threshold showing of a

violation, the burden of proof shifts to the creditor to prove its compliance.  That rule, however, offers little guidance in this case because the real question at issue here is whether Defendant's purported security interest (or lack of it) is an element of Plaintiffs' claim, or an affirmative defense *to* it.") (emphasis in original).

Here, however, I need not decide who bears the burden of proof at trial.  Regardless of which party bears that burden, BB&T is not entitled to summary judgment.  BB&T is entitled to summary judgment only if there is no genuine dispute that BB&T acquired plaintiffs' loan after May 20, 2009.  As I see it, there is a genuine dispute as to when BB&T acquired plaintiffs' loan.

As discussed, *supra*, if plaintiffs bear the burden of proof on this issue at trial, ordinarily, BB&T might win by "pointing out … that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.  But, such disposition would not be appropriate in this case.  In Mr. Ward's Affidavit, he stated:  "[B]ecause of the lack of discovery in this matter … I have not had access to almost any of the relevant and material documents that I would need to further prove my case because these documents are within the sole control of Defendant BB&T."  ECF 56-2 ¶ 12.  Mr. Ward is no doubt correct that the relevant evidence, to the extent it still exists, is outside plaintiffs' control.  Indeed, Congress's stated purpose in enacting TILA was to ensure "meaningful disclosure" of such information.  *See* 15 U.S.C. § 1601(a).  Thus, if plaintiffs bear the burden of proof on this issue at trial, BB&T cannot, at this stage, obtain summary judgment simply by pointing to the lack of relevant evidence, because plaintiffs have had no opportunity to obtain relevant evidence.

Moreover, if BB&T bears the burden of proof on this issue at trial, it has failed to produce evidence sufficient to entitle it to summary judgment.  As discussed, *supra*, the only

evidence BB&T submitted in support of its assertion that it acquired plaintiffs' loan in 2005 is the statement of Patrick Carper, a Vice President at BB&T, that "BB&T purchased Plaintiffs' Note from Southern on August 17, 2005." ECF 51-3 ¶ 7.  Carper avers generally that all the statements in his Declaration are "based both on [his] personal knowledge and the information [he has] acquired pursuant to [his] duties as Vice President", *id*. ¶ 1, as well as his review of BB&T's business records.  *Id*. ¶ 3.  However, a specific explanation of how Carper came to know this crucial fact is conspicuously absent.  *See generally* ECF 51-3.  Moreover, although Carper attached to his Declaration copies of other relevant documents culled from BB&T's business records, he did not attach any documents pertinent to this crucial fact.  The Spartan nature of Carper's assertion is all the more surprising in light of BB&T's earlier representations in other submissions to the Court that it acquired plaintiffs' loan in 2012.

To be sure, in its Reply, BB&T insists that it previously represented that it acquired plaintiffs' loan in 2012 because "[i]n moving to dismiss, BB&T was limited to the allegations in the complaint and had to assume the truth of those allegations in support of its arguments for dismissal." ECF 60.  BB&T's assertion rings hollow.  It is true that, when a defendant moves to dismiss a complaint for failure to state a claim, the complaint's allegations must be taken as true.  *See, e.g.*, *Houck v. Substitute Tr. Servs., Inc.*, ___ F.3d ___,  No. 13-2326, 2015 WL 3973527, at *9 (4th Cir. July 1, 2015).  However, in this case, plaintiffs did *not* allege that BB&T acquire their loan in 2012.  *See, e.g.*, ECF 2 ¶ 11.  Rather, BB&T was the first to assert that it acquired plaintiffs' loan in 2012.  *See* ECF 8-1 at 4.

Therefore, the Court is left with contradictory assertions by BB&T and inadequate documentation to establish that BB&T's prior assertions were mere mistakes.  Carper's general

statement that the information in his Declaration is based on personal knowledge, information he

acquired in the course of his duties, and upon review of BB&T's business records regarding

plaintiffs' loan is too conclusory with respect to the central fact at issue, so as to satisfy Fed. R.

Civ. P. 56(c)(4)'s requirement that a declaration "used to support or oppose a motion must be

made on personal knowledge … ."  *See also*, *e.g.*, *Evans v. Technologies Applications & Serv.*

*Co.*, 80 F.3d 954, 962 (4th Cir. 1996) ("[S]ummary judgment affidavits cannot be conclusory …

.").

Discussion of a similar situation in *Erichsen v. RBC Capital Markets, LLC*, 883 F. Supp.

2d 562, 567-68 (E.D.N.C. 2012), is instructive.  There, the court said, *id.*:

> Park's declaration reveals that as part of his job responsibilities, he is
> familiar with defendant's acquisition of the business of the Carlin Group, LLC's
> companies, including Carlin Equities Corporation. Park. Decl. ¶ 2.  However, the
> court agrees with plaintiff that Park's declaration regarding the date on which the
> undated RDS [Risk Disclosure Statement] was signed is not based on personal
> knowledge.  Not only does he suggest that he "believes" the date to be March 20,
> 2007, but his belief is not based on incontrovertible facts or documents included
> in the record.  As plaintiff points out, Park's belief is based on "other account
> documents believed to be completed or submitted by Erichsen" at the same time
> as the undated RDS.  Those "other account documents" are not described
> specifically in the declaration, nor are they attached to the same as exhibits.
> Furthermore, defendant provided no further explanation of these documents,
> which might have offered factual support for Park's statement.  The case law
> defendant offers in support is simply not persuasive in light of the plethora of
> cases that hold that Rule 56 affidavits must be based on personal knowledge and
> not conjecture or belief.  *See*, *e.g.*, *Ambling Mgmt. Co. v. Univ. View Partners,*
> *LLC*, 581 F. Supp. 2d 706, 720 (D. Md. 2008); *Malina v. Baltimore Gas & Elec.*
> *Co.*, 18 F. Supp. 2d 596, 605 n.4 (D. Md. 1998).

Like the declarant in *Erichsen*, Carper's Declaration does not include sufficient factual

support for the Court to find that his statement as to the date BB&T acquired plaintiffs' debt is

based on personal knowledge.  Although Carper avers he has reviewed BB&T's business

records, as in *Erichsen*, Carper has not attached supporting documents, nor does he describe

- 13 -

"specifically in the declaration" the documents supporting his assertion, or provide "further explanation of these documents." *Erichsen*, 883 F. Supp. 2d at 568.   In addition, although Carper avers that his statements are based on personal knowledge, nothing indicates that Carper was personally involved in the acquisition of plaintiffs' loan, or that he was even employed by BB&T in 2005, when he states the acquisition took place.

In short, I cannot discern what personal experiences or business records led Carper to his seemingly bald conclusion that BB&T acquired plaintiff's loan in 2005.   Thus, I cannot determine that Carper's statement that BBT& acquired plaintiffs' loan in 2005 is based on personal knowledge. *See Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1341-42 (4th Cir. 1992) (quoting *Antonio v. Barnes*, 464 F.2d 584, 585 (4th Cir. 1972)) ("The absence of an affirmative showing of personal knowledge of specific facts vitiates the sufficiency of the affidavits and, accordingly, summary disposition based thereon [is] improper.") (alteration in *Catawba*); *Panoqicz v. Hancock*, DKC-11-02417, 2015 WL 4231712, at *1 n.1 (D. Md. July 9, 2015) ("In addition, Plaintiff's affidavit …, which states that '[e]ach and every statement proposed as a fact in the Summary Judgment Proposed Facts are true and accurate based on my personal knowledge[,]' was only credited to the extent the facts were based on his personal knowledge.") (alterations in *Panoqicz*).

Based on the evidence now before me, and given the posture of the case, I am satisfied that plaintiffs are entitled to conduct discovery on the question of when BB&T acquired their loan. *See*, *e.g.*, *McCray*, 741 F.3d at 483.   Therefore, summary judgment is not warranted at this juncture.

**Conclusion**

For the foregoing reasons, I will deny the Motion (ECF 51).  A separate Order follows, consistent with this Memorandum.


Date: August 4, 2015                          /s/
                                 _____
                                 Ellen Lipton Hollander
                                 United States District Judge