FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 MAY 17 PM 6: 38

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PHILLIP WARD, ET AL., <br> *Plaintiffs,* <br><br> v. <br><br> BRANCH BANKING & TRUST COMPANY, <br> *Defendant.* | Civil Action No.: ELH-13-1968 |

## MEMORANDUM OPINION

Phillip and Deirdre Ward, the self-represented plaintiffs, filed suit in July 2013 against defendants Branch Banking & Trust Company ("BB&T") and the Fisher Law Group, PLLC (the "Fisher Law Group"), alleging five counts related to defendants' attempt to foreclose plaintiffs' home in Glenn Dale, Maryland (the "Property"). *See* ECF 2.[1] Plaintiffs filed an Amended Complaint in September 2013. ECF 14.

Plaintiffs' claims against the Fisher Law Group were dismissed in June 2014, along with four of the five counts alleged against BB&T. *See* ECF 28, Memorandum; ECF 29, Order.[2]

---

[1] Plaintiffs filed suit in the Circuit Court for Prince George's County. BB&T removed the case to this Court. ECF 1, Notice of Removal. The case was initially assigned to Judge Alexander Williams, Jr. It was reassigned to Judge Catherine Blake in November 2013, and then reassigned to me in December 2013.

[2] The dismissals were without prejudice. But, I stated that if plaintiffs did not move to amend the Complaint within twenty-one days from the date of the Order, the dismissal would be with prejudice. *See* ECF 29. As to BB&T, plaintiffs filed a Motion to Amend the Complaint one day late, and failed to include a copy of the proposed Second Amended Complaint. *See* ECF 33. At the request of the Court, plaintiffs filed a proposed Second Amended Complaint as to BB&T. *See* ECF 39, Order; ECF 43, Proposed Second Amended Complaint. Ultimately, by Memorandum (ECF 61) and Order (ECF 62) of March 2, 2015, I denied plaintiffs' Motion to

Count II of the Amended Complaint (ECF 14) remains, alleging that BB&T violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, by failing to disclose the sale or transfer of plaintiffs' mortgage loan within 30 days after BB&T acquired the loan.[3] ECF 14 ¶¶ 30-31.

Now pending is BB&T's "Second Motion for Summary Judgment" (ECF 89), supported by a memorandum of law (ECF 89-1) (collectively, the "Second Motion") and nine exhibits, all filed either at ECF 89-2 or ECF 89-3. Plaintiffs have filed an "Opposition to Defendant's Second Motion for Judgment" (ECF 90), accompanied by a memorandum of law (ECF 90-2) (collectively, the "Opposition"), an "Affidavit of Phillip Ward" (ECF 90-3),[4] and eight exhibits (ECF 90-4 through ECF 90-11). The exhibits duplicate, in part, exhibits that BB&T has submitted. BB&T has filed a reply (ECF 91), accompanied by one exhibit (ECF 91-1), which provides a more legible copy of an exhibit submitted with its Second Motion. *See* ECF 89-2 at 39.

The Second Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant the Second Motion.

## I. Factual and Procedural Background[5]

On January 27, 2015, BB&T filed a Motion for Summary Judgment with respect to Count II. ECF 51 ("First Motion"). Based on the unsupported Declaration of Patrick Carper

---

Amend, because three of the proposed counts were barred by collateral estoppel, and the remaining proposed count failed to state a claim upon which relief could be granted.

[3] Plaintiffs maintain, incorrectly, ECF 90-2 at 3: "The case currently has several outstanding TILA claims yet to be ruled upon."

[4] Mr. Ward attests in his Affidavit (ECF 90-3) to the authenticity of plaintiffs' exhibits and advances additional arguments in opposition to the Second Motion.

[5] Because plaintiffs are self-represented, their submissions must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

(ECF 51-3), one of BB&T's executives, BB&T alleged that it acquired plaintiffs' loan before the relevant TILA provision went into effect. ECF 51-1 at 6-8. By Memorandum (ECF 68) and Order (ECF 69) of August 4, 2015, I denied BB&T's First Motion, and permitted the parties to conduct limited discovery as to when BB&T acquired plaintiffs' loan. In particular, I ruled that Carper's Declaration contained a "seemingly bald conclusion that BB&T acquired plaintiff[s'] loan in 2005" and did not permit the Court to "discern what personal experiences or business records" provided the basis for the Declaration. ECF 68 at 14.

The parties subsequently engaged in limited discovery. The Second Motion followed.

Plaintiffs acquired the Property in July 2005, with a loan from Southern Trust Mortgage, LLC ("Southern"). ECF 89-2 at 8, Note. On July 25, 2005, plaintiffs executed a Promissory Note (the "Note") that encumbered the Property. ECF 89-2 at 8-11, Note; *see* ECF 90-3, Affidavit of Phillip Ward at 1 ¶ 3. The Note was secured by a Deed of Trust. ECF 89-2 at 13-32. On October 4, 2005, the Deed of Trust was recorded in the land records of Prince George's County. *Id.* at 13.

BB&T maintains that it "purchased plaintiffs' Note from Southern on August 17, 2005." ECF 89-1 at 3. In support of this contention, BB&T relies on two declarations provided by BB&T employees and various business records that, according to BB&T, demonstrate that BB&T acquired plaintiffs' mortgage on August 17, 2005. *See id.* at 2-5.

In particular, BB&T relies on the Declaration of Christina Powers, a "Liability and Qualified Mortgage Risk Manager" in BB&T's "lending department." ECF 89-2 at 2 ¶ 1; *see id.* at 2-6. Ms. Powers's duties include "quality assurance and risk-related issues associated with BB&T's sale and purchase of mortgage loans on the secondary market, handling repurchase

obligations, compliance-related issues for the sale and purchase of loans by BB&T, and title-related issues associated with those loans." *Id.* at 2 ¶ 1.

BB&T has also submitted the Declaration of Mary Elizabeth Schwiers (ECF 89-3 at 2-4), an "Investor Reporting Section Manager" in BB&T's "investor reporting department." *Id.* at 2 ¶ 1. Ms. Schwiers is "responsible for ensuring that investors' loan accounts, including the receipt and disbursement of payments, are handled appropriately, accurately and consistent with the contractual obligations owed by BB&T to the investor." *Id.*

As stated, BB&T contends that its business records show that it acquired plaintiffs' mortgage in August 2005. First, BB&T submits that a "Funding Disbursement Sheet" confirms that it acquired plaintiffs' mortgage on August 17, 2005. *See* ECF 89-1 at 3. Ms. Powers's Declaration provides, in relevant part, ECF 89-2 at 3 ¶ 4: "When BB&T purchases a loan on the secondary market through a correspondent lending arrangement, BB&T provides the correspondent lender with a funding disbursement sheet indicating the amount BB&T is funding to purchase the loan." A "Funding Disbursement Sheet" prepared by Tina Wells concerning "Philip L Ward" is date-stamped "8/17/05" and time-stamped "3 36 42 PM." *Id.* at 34. Ms. Powers avers that Ms. Wells works in "BB&T's correspondent lending department." *Id.* at 89-2 at 3 ¶ 4. The "Funding Disbursement Sheet" identifies "Southern Trust Mortgage" as the "ORIGINATING COMPANY" and indicates that the "Total Amount Funded" was "$361,080 05." *Id.* at 34. In relevant part, the "Funding Disbursement Sheet" states, *id.* (capitalized in original): "THE ABOVE REFERENCED LOAN HAS BEEN PURCHASED/FUNDED AS OF 08/17/2005 THE FUNDS HAVE BEEN WIRED/TRANSFERRED AS PER YOUR INSTRUCTIONS."

Second, BB&T maintains that a "Notice of Assignment, Sale or Transfer of Servicing Rights" demonstrates that it acquired servicing rights to plaintiffs' loan on August 17, 2005. *See* ECF 89-1 at 3. In her Declaration, Powers states, in relevant part, ECF 89-2 at 4 ¶ 5: "In addition to purchasing Plaintiffs' loan, BB&T acquired the servicing rights for the loan and provided notice of transfer of the servicing rights to Plaintiffs Phillip Ward and Deidre Ward on August 17, 2005." A "Notice of Assignment, Sale or Transfer of Servicing Rights," addressed to plaintiffs and dated August 17, 2005, provides, in pertinent part, *id.* at 36: "You are hereby notified[] that the servicing of your mortgage loan, that is, the right to collect payments from you is being assigned, sold, or transferred from Southern Trust Mortgage to Branch Banking and Trust Company effective 09/01/05[.]"

Third, BB&T contends that a "MERS Milestone Report" shows that it acquired plaintiffs' mortgage in August 2005. *See* ECF 89-1 at 4. Ms. Powers explains in her Declaration, ECF 89-2 at 4 ¶ 6: "The MERS® System is a private electronic database used by members of the MERS® System to track servicing rights and beneficial ownership interests in mortgage loans registered on the system which loans are secured by a deed of trust or mortgage held by Mortgage Electronic Registration Systems, Inc. ('MERS')." Further, Ms. Powers avers, *id.* at 5 n.1:

> A transferor or a transferee can initiate the posting of a transfer of the servicing rights or beneficial rights or both of a mortgage on the MERS system. Whichever one initiates the transfer, the other one has to accept or confirm the transfer in order for it to appear on the MERS system. The transfer gets initiated in a "Batch" and that "Batch" is then accepted or confirmed by the non-initiating MERS members. The date under the "Date" column on the MERS Milestone Report is the date on which the "Batch" is accepted or confirmed, which may be different from the effective date of the transfer.

According to the MERS Milestone Report for plaintiffs' mortgage, Southern registered plaintiffs' mortgage on August 5, 2005. *Id.* at 39. On August 24, 2005, BB&T accepted the transfer of both the beneficial and the servicing rights to plaintiffs' mortgage. *Id.* The MERS Milestone Report lists August 17, 2005, as the effective date of transfer for both beneficial and servicing rights to plaintiffs' mortgage. *Id.* The MERS Milestone Report also indicates that, effective September 8, 2005, BB&T transferred beneficial rights to plaintiffs' mortgage to the "Federal National Mortgage Association," known as "Fannie Mae." *Id.*; ECF 89-1 at 2. Ms. Powers avers, ECF 89-2 at 6 ¶ 8.c: "Although BB&T transferred to Fannie Mae the beneficial rights in Plaintiffs' mortgage, it did not transfer the servicing rights. BB&T continued to service Plaintiffs' loan."

Finally, BB&T submits that its internal "'Loan Transfer History' confirms that BB&T acquired plaintiffs' loan prior to September 14, 2005 . . . ." ECF 89-1 at 4.[6] According to Ms. Schwiers's Declaration (ECF 89-3 at 3 ¶ 3), the "Loan Transfer History" (ECF 89-3 at 6) is "a computer screen shot of the Loan Transfer History page for Plaintiffs' loan . . . ." *Id.* at 3 ¶ 3. According to Ms. Schwiers, the "Loan Transfer History for Plaintiffs' loan shows that as of September 14, 2005, BB&T sold Plaintiffs' loan to . . . Fannie Mae . . . ." ECF 89-3 at 3 ¶ 4. Thereafter, according to Ms. Schwiers, the "Loan Transfer History" indicates that Fannie Mae transferred plaintiffs' mortgage through various loan pools that Fannie Mae owned. *See id.* at 3

---

[6] As noted, the MERS Milestone Report indicates that, effective September 8, 2005, BB&T transferred beneficial rights to plaintiffs' mortgage to Fannie Mae. ECF 89-2 at 39. In my view, this discrepancy is not material.

¶¶ 5-6. BB&T maintains, ECF 89-1 at 5: "The Loan Transfer History also shows that at no time after selling plaintiffs' loan to Fannie Mae did BB&T reacquire ownership of the loan."[7]

Plaintiffs counter that "a genuine factual dispute exists" as to "when Defendant BB&T allegedly purchased the *Pro Se* Plaintiffs['] note." ECF 90-2 at 6. In particular, plaintiffs contend, *id.* at 7: "[A] conflict exists between the Land Records of Prince George's County, Maryland County [sic] and Defendant BB&T['s] internal records as well as its representation of the MERS milestone report." *See* ECF 90-3 ¶¶ 6-10.

Mr. Ward avers in his Affidavit (ECF 90-3) that he "assessed [sic] online records from [the] PG county official site searching for any recorded documents by Southern Trust, BB&T and Fannie Mae on August 17, 2005 that in [sic] involved Southern Trust selling the note assigning the Deed of Trust, or transferring the Deed of Trust to BB&T regarding [his] property . . . ." *Id.* at 2 ¶ 6. According to Mr. Ward, "no such recordings were found." *Id.*

In this regard, plaintiffs have submitted a print out of the search results for "ward, phillip" as "Grantor/Grantee" for "all dates" in what appears to be an online database of the land records of Prince George's County. ECF 90-4 at 2-3. The print out identifies the date on which

---

[7] BB&T also submits an "Assignment of Deed of Trust" (ECF 89-2 at 41-42), dated March 28, 2012, which the Fisher Law Group prepared concerning the Property. Ms. Powers avers in her Declaration, ECF 89-2 at 6 ¶ 8.d:

> To allow for the initiation of foreclosure proceedings, MERS assigned the subject Deed of Trust to BB&T pursuant to an Assignment of Deed of Trust dated March 28, 2012. Attached as [ECF 89-2 at 41-42] is a true and correct copy of the Assignment of Deed of Trust. This assignment is related to the deactivation of Plaintiff's mortgage loan from the MERS® System on September 16, 2013, by BB&T, in its capacity as the servicer of Plaintiffs' loan. The deactivation of Plaintiffs' mortgage loan from the MERS® system did not result in any change or transfer of ownership of Plaintiffs' loan. Ownership of Plaintiffs' loan remained with Fannie Mae.

a particular "Instrument Type" was recorded pertaining to Mr. Ward as grantor or grantee and the "Book/Page" on which the original document is found. *Id.* Notably, the print out provides no information as to whom Mr. Ward transferred a property interest or whether subsequent recipients transferred their interests to yet other parties. *See id.*

Mr. Ward maintains in his Affidavit that "there has been only been [sic] one entry of a recorded document in the land record in PG County to date on October 4, 2005 with Southern Trust Mortgage regarding [his] property . . . ." ECF 90-3 at 2 ¶ 7. According to Mr. Ward, the original Deed of Trust to Southern (ECF 90-5 at 2) is the "[l]ast recording in [the] PG County land records . . . ." *Id.* at 2 ¶ 8.

Plaintiffs have also submitted an undated "State of Maryland Land Instrument Intake Sheet" (ECF 90-6 at 2), which is partially illegible. It reflects the recording of a transfer of a deed of trust from plaintiffs to Southern. *Id.* In his Affidavit, Mr. Ward avers, ECF 90-3 at 3 ¶ 9: "[T]he initial Intake sheet . . . shows no purchase or assignment to Defendant BB&T" on August 17, 2005. *Id.* He also asserts, *id.*: "The public records simply have no record or reference to BB&T purchasing the Note from Southern Trust or selling the note to Fannie Mae."

In addition, plaintiffs have submitted a "Mortgagee Policy / Schedule A" from "First American Title Insurance Company," which lists the "Date of Policy" as "10/04/2005 @ 3 06 PM." ECF 90-9 at 2. According to Mr. Ward, it appears in the "PG County Court Land Records . . . ." ECF 90-3 at 4 ¶ 15. The document identifies the "INSURED" as "SOUTHERN TRUST MORTGAGE, LLC, its successors and/or assigns as their interest may appear." ECF 90-9 at 2 (capitalized in original). It describes the "Mortgagee and assignments . . . covered by this Policy" as "Deed of Trust dated 07/25/2005, recorded 10/04/2005 at 3 06 PM, in Liber 23130, at

folio 522, from PHILLIP WARD and DEIDRE BARRON WARD to SOUTHERN TRUST MORTGAGE, LLC in the amount of $356,000 00." *Id* (capitalized in original).

Plaintiffs have also filed a "Substitute Trustees' Deed," which is dated August 6, 2014, and was recorded in the land records of Prince George's County by the Fisher Law Group on August 28, 2014. ECF 90-11 at 2-4. In pertinent part, the "Substitute Trustees' Deed" provides that "default . . . occurred under the terms of a certain Deed of Trust from Deidre Barron Ward and Phillip L. Ward dated July 25, 2005 and recorded in Liber 23130 at folio 522 among the Land Records of Prince George's County . . . ." *Id.* at 2. Mr. Ward asserts in his Affidavit (ECF 90-3 at 6) that the "Substitute Trustees' Deed" (ECF 90-11 at 2-4) contradicts the "Loan Transfer History" (ECF 89-3 at 6) and Ms. Schwiers's Declaration (ECF 89-3 at 3 ¶ 4), which indicate that BB&T sold plaintiffs' loan to Fannie Mae on September 14, 2005. However, it is not apparent how the "Substitute Trustees' Deed" (ECF 90-11 at 2-4) contradicts BB&T's submissions (ECF 89-3 at 6; ECF 89-3 at 3 ¶ 4).

Notably, BB&T does not dispute plaintiffs' contention that the original Deed of Trust from plaintiffs to Southern was the only Deed of Trust that was recorded in the land records of Prince George's County. *See* ECF 91 at 3-4.

Beyond the land records of Prince George's County, plaintiffs submit that closing documents for the mortgage contradict BB&T's contention that it acquired servicing rights to plaintiffs' loan on August 17, 2005. *See* ECF 90-3 at 3 ¶ 10. In particular, Mr. Ward avers *id.*: "[T]he initial escrow closing documents from the Southern Trust Mortgage date[d] on July 25, 2005 . . . list BB&T as the original servicer of my loan beginning on July 25, 2005 directly contradicting . . . the BB&T employee's account of when BB&T first acquired servicing rights."

Although Mr. Ward does not cite to a particular submission in support of this proposition, his Affidavit appears to refer to an exhibit (ECF 56-3) that plaintiffs submitted in support of "Plaintiffs' Opposition to Defendant's [First] Motion for Summary Judgment." ECF 56. An "Initial Escrow Account Disclosure Statement" concerning the Property, dated July 25, 2005, identified "BB&T LOAN SERVICING" as the "Servicer's Name." ECF 56-3 at 1.

Plaintiffs also rely on a document that appears to have been filed with the Circuit Court for Prince George's County during the course of foreclosure proceedings against plaintiffs. An undated "Affidavit of True Copy of Lien Instrument" by Michael Owens of the Fisher Law Group provides, in relevant part, ECF 90-8 at 2:

> I, the undersigned, am a processor employed by The Fisher Law Group, PLLC. I do certify that the attached copy of the Deed of Trust dated July 25, 2005 and recorded on October 4, 2005 in Liber 23130 at Folio 522 among the Land Records of Prince George's County, Maryland is a true and accurate copy of the lien instrument upon which this foreclosure action is based, as downloaded from Maryland Land Records On line . . . .

## II. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. Ltd. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts' showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322–24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New York*, ___ F.3d ___, 2016 WL 2343251, at *9 (4th Cir. May 4, 2016) ("Where the determination of what actually happened depends on an

assessment of the credibility of the respective witnesses, '[t]his assessment is a disputed issued of fact [that] cannot be resolved on summary judgment.'") (citation omitted); *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States,* 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *Anderson,* 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd,* 718 F.3d 308, 313 (4th Cir. 2013). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

### III. Discussion

As noted, plaintiffs allege that BB&T violated TILA when it failed to provide disclosures required by TILA after it acquired plaintiffs' mortgage loan. "In adopting TILA, Congress declared that '[i]t is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms

available to him and avoid the uninformed use of credit.' 15 U.S.C. § 1601(a)." *Gilbert v. Residential Funding LLC*, 678 F.3d 271, 275-76 (4th Cir. 2012).

In relevant part, TILA states, 15 U.S.C. § 1641(g) (2012):

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

(2) Definition

As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

Section 1641(g) was enacted as an amendment to TILA in 2009, as part of the Helping Families Save Their Homes Act of 2009. *See* Pub. L. No. 111-22, § 404, 123 Stat. 1632, 1649 (titled "Notification of Sale or Transfer of Mortgage Loans", codified at 15 U.S.C. § 1641(g)) (approved May 20, 2009). Judges in other federal district courts have consistently held that the provision does not apply retroactively—that is, it applies only to transfers that occurred after the effective date of the amendment, May 20, 2009. *See, e.g., Bradford v. HSBC Mortgage Corp.*, 829 F. Supp. 2d 340, 353 (E.D. Va. 2011) (citing *Angelini v. Bank of Am.*, 11–3011, 2011 WL

2433485, at *5 (D. Or. Apr. 27, 2011)); *accord, e.g., Diunugala v. JP Morgan Chase Bank, N.A.,* No. 12CV2106-WQH-KSC, 2015 WL 3966119, at *4 (S.D. Cal. June 30, 2015); *Craig v. Bank of New York Mellon Corp.,* No. 10-CV-4438 SLT RML, 2014 WL 1347225, at *10 (E.D.N.Y. Mar. 31, 2014); *O'Dell v. Deutsche Bank Nat. Trust Co.,* 12-CV-985 JCC/IDD, 2013 WL 2389874, at *13 (E.D. Va. May 30, 2013) ("As 15 U.S.C. § 1641(g) had not yet been implemented, there would have been no need [in 2011] for notice under that TILA provision."). Accordingly, in order for BB&T to have violated § 1641(g) with respect to plaintiffs' loan, BB&T must have acquired the loan after May 20, 2009.

Plaintiffs advance two primary arguments why the declarations and business records submitted by BB&T do not demonstrate that BB&T acquired plaintiffs' loan in August 2005.[8] First, plaintiffs attack the credibility and sufficiency of BB&T's submissions. According to plaintiffs: "Defendant BB&T's newly submitted affidavits falls [sic] far short of satisfying any reasonable creditably [sic] standard of veracity . . . ." ECF 90-2 at 1-2.[9] Plaintiffs maintain that "neither employee appears to actually have had first hand or personal knowledge of the loan activities . . . ." *Id.* at 10. Further, they submit that "BB&T['s] internal and what would appear to be self[-]serving records have no . . . presumption of creditably [sic] or reliability." *Id.* at 7. In this regard, plaintiffs contend that "critical evidence that a purchase and sell [sic] of note [sic] occurred is not present." *Id.* at 10. Plaintiffs maintain that BB&T has submitted "no

---

[8] Plaintiffs also maintain that "new material facts . . . warrant the Court revisiting the basis of the previously excluded claims in this matter . . ." (ECF 90-2 at 11) and complain that they "never have been given the opportunity to conduct general discovery in this matter." *Id.* at 8. Plaintiffs identify no new material facts. Therefore, I decline to revisit my earlier rulings in this case.

[9] Plaintiffs' submissions refer repeatedly to BB&T's "affidavits." I assume that plaintiffs refer to the declarations that BB&T has submitted.

endorsements from 2005 with the date and the time to prove that an actual assignment has occurred" (ECF 90-2 at 10-11) and that "no proof of a wire payment, receipt of payment, or any other type of payment given or received have ever been provided by Defendant BB&T in this matter." *Id.* at 11. With regard to the MERS Milestone Report (ECF 89-2 at 39), plaintiffs submit that, "upon close inspection by the naked eye," it appears that "this document has been tampered with and altered." ECF 90-3 at 5.

Second, plaintiffs contend that Mr. Ward's Affidavit (ECF 90-3) and their exhibits (ECF 90-4 through ECF 90-11) contradict the declarations and records that BB&T has introduced. As noted, plaintiffs submit that, after the Deed of Trust was initially recorded in the land records of Prince George's County on October 4, 2005, no further assignments were recorded. *See* ECF 90-2 at 7; ECF 90-3 at 2-3 ¶¶ 6-9. Plaintiffs also aver that records that they received after obtaining the loan contradict BB&T's business records as to when BB&T acquired their mortgage. *See* ECF 90-2 at 7; ECF 90-3 at 3 ¶ 10.

Plaintiffs identify no genuine issue as to the credibility or the sufficiency of BB&T's declarations and business records. Fed. R. Civ. P 56(c)(4) explicitly anticipates that declarations may be used to support a motion for summary judgment. It provides, in relevant part, *id.*: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

To be sure, "summary judgment affidavits cannot be conclusory, *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990), or based upon hearsay, *Maryland*

*Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)." *Erichsen v. RBC Capital Markets, LLC,* 883 F. Supp. 2d 562, 567 (E.D.N.C. 2012). Indeed, as stated, I concluded earlier that the Carper Declaration (ECF 51-3) submitted by BB&T in support of its First Motion (ECF 51) advanced a "seemingly bald conclusion that BB&T acquired plaintiff[s'] loan in 2005" and included insufficient information for the Court to "discern what personal experiences or business records" formed the basis for the Declaration. ECF 68 at 14.

Here, the declarations remedy these defects. Notably, the declarations refer to copies of business records with which Ms. Powers and Ms. Schwiers are familiar in their capacities as BB&T employees. *See* ECF 89-2 at 2-3 ¶ 1; ECF 89-3 at 2 ¶ 2. Plaintiffs' contention that the Court should disregard their declarations because Ms. Powers and Ms. Schwiers did not personally participate in the transfer of plaintiffs' loans is without merit. *See* ECF 90-3 at 4-5 ¶ 17. BB&T has not introduced the declarations as direct evidence of the transfer of plaintiffs' mortgage. Rather, the declarations provide information, based on the professional experience of the declarants as BB&T employees, about the content of the business records that BB&T has submitted.

Business records, such as the records on which BB&T relies, are routinely offered in connection with motions for summary judgment. Fed. R. Civ. P. 56(c)(1)(A) provides, in relevant part: "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Of course, "[a] party may object that the material cited to support or dispute a

fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Yet, business records, such as the records that BB&T has submitted, are admissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 803(6)(B) (excluding from the general prohibition against hearsay evidence "record[s] . . . kept in the course of a regularly conducted activity of a business . . . "). Insofar as plaintiffs assert that the business records under BB&T's control are unreliable (*see* ECF 90-2 at 7), as BB&T notes (ECF 91 at 5), the MERS Milestone Report is derived from a database over which BB&T exercises no direct control. *See* ECF 89-2 at 4 ¶ 6.

I am not persuaded by plaintiffs' contention that BB&T omitted required evidence or that its submissions have been "tampered with and altered." ECF 90-3 at 5. I am unaware of any requirement that BB&T must provide "endorsements from 2005 with the date and the time to prove that an actual assignment has occurred" (ECF 90-2 at 10-11) or "proof of a wire payment, receipt of payment, or any other type of payment given or received" as to the transfer of plaintiffs' mortgage. ECF 90-2 at 11. Even assuming that such requirements exist, however, I note that the date- and time-stamped "Funding Disbursement Sheet" provides, in relevant part, ECF 89-2 at 34 (capitalized in original, italics added): "THE ABOVE REFERENCED LOAN HAS BEEN PURCHASED/FUNDED AS OF 08/17/2005 *THE FUNDS HAVE BEEN WIRED/TRANSFERRED AS PER YOUR INSTRUCTIONS.*" Moreover, I see no facial indication that the MERS Milestone Report (ECF 89-2 at 39) has been altered or is incomplete. In this regard, I note that Ms. Powers's Declaration certifies that the MERS Milestone Report (*id.*) is "a true and correct copy of the MERS® System Milestone Report for Plaintiffs' mortgage loan." *Id.* at 4 ¶ 6.

As stated, plaintiffs also maintain that the exhibits submitted with their Opposition (ECF 90-4 through ECF 90-11) contradict BB&T's submissions. In particular, supported by a printout of an online search of the land records of Prince George's County (ECF 90-4 at 2-3), plaintiffs contend that, after October 4, 2005, no subsequent transfer of plaintiffs' note was recorded. ECF 90-3 at 3 ¶ 9. On that basis, plaintiffs "dispute that on August 17, 2005 . . . BB&T purchased a Note from Southern Trust Mortgage." *Id.*

As a preliminary matter, Mr. Ward's Affidavit states that he "search[ed] for any recorded documents by Southern Trust, BB&T and Fannie Mae on August 17, 2005 that in [sic] involved Southern Trust selling the note assigning the Deed of Trust, or transferring the Deed of Trust to BB&T regarding [his] property . . . ." ECF 90-3 at 2 ¶ 6. Yet, plaintiffs' supporting exhibit (ECF 90-4 at 2-3), a printout of an online search of the land records of Prince George's County, appears to provide the results of a search of the "Grantor/Grantee" index only as to Phillip Ward. "[T]he standard method for title searches has long been to examine the chain of title." *In re Colon*, 563 F.3d 1171, 1179 (10th Cir. 2009). As the Tenth Circuit has explained, *id.*:

> The searcher first constructs a chain of grantors of the property, using the grantee index to find the deed to the purported owner from a prior grantor, returning to the grantee index to find the deed to that prior grantor from an earlier grantor, and continuing that process for an appropriate period of time. The searcher then uses the grantor index to find all conveyances by each grantor during the period of the grantor's ownership of the property and examines each conveyance to determine whether the property conveyed is the property of interest.

Accordingly, it is unclear how an apparent search of land records pertaining only to Mr. Ward as grantor or grantee would have identified a subsequent transfer of the loan from Southern to BB&T. Nonetheless, as noted, BB&T does not dispute that the transfer of the loan from Southern to BB&T was not recorded. *See* ECF 91 at 3-4. Therefore, I will assume that no

records of subsequent assignments of plaintiffs' loan were recorded. Nevertheless, that subsequent transfers of the Note were not recorded in the land records of Prince George's County does not contradict BB&T's business records, which show that BB&T acquired plaintiffs' mortgage in August 2005.

Rejecting a similar argument, Judge Bennett recently observed that, under Maryland law, "'the holder of the deed of trust note . . . may transfer the note to another party without recording a new deed of trust . . . in the Land Records.'" *Leith v. Deutsche Bank Nat'l Trust Co.*, RDB-15-1672, 2016 WL 704306, at *4 (D. Md. Feb. 23, 2016) (quoting *In re Williams v. Chevy Chase Bank*, 277 B.R. 78, 81-82 (Bankr. D. Md. 2002)); *see also Reed v. PNC Mortgage*, No. AW-13-1536, 2013 WL 3364372, at *3 (D. Md. July 2, 2013) ("[U]nder Maryland law, '[a] deed of trust securing a negotiable promissory note cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust.' *Deutsche Bank Nat'l Trust Co. v. Brock*, 430 Md. 714, 63 A.3d 40, 48 (Md. 2013). Accordingly, there is no legal requirement that an assignment of a deed of trust must be recorded in Maryland.").

As there was no legal requirement that BB&T record its acquisition of the Deed of Trust in the land records of Prince George's County, the absence of such a record is of no moment. BB&T's evidence that it acquired plaintiffs' loan during August 2005 is not contradicted by records submitted by plaintiffs, which suggest that a title insurance company (*see* ECF 90-9 at 2) and the Fischer Law Group (*see* ECF 90-8 at 2; ECF 90-11 at 2-4) relied on the original Deed of Trust from plaintiffs to Southern, recorded in the land records of Prince George's County.

As discussed, Mr. Ward's Affidavit maintains, ECF 90-3 at 3 ¶ 10: "[T]he initial escrow closing documents from the Southern Trust Mortgage date[d] on July 25, 2005 . . . list BB&T as the original servicer of my loan beginning on July 25, 2005 directly contradicting . . . the BB&T employee's account of when BB&T first acquired servicing rights." There is nothing in the record to suggest that "BB&T LOAN SERVICING" (ECF 56-3 at 1) is the same entity as BB&T. Even assuming that the "Initial Escrow Account Disclosure Statement" (ECF 56-3 at 1) indicated that BB&T or a related entity was the initial loan servicer for plaintiffs' mortgage, this fact would not preclude a subsequent assignment of the loan from Southern to BB&T. Moreover, it provides no indication that BB&T acquired plaintiffs' loan after May 20, 2009, which is the material fact at issue here.

In light of the foregoing, I am persuaded that no genuine dispute of material fact exists as to when BB&T acquired plaintiffs' loan. The evidence here "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. As evidenced by BB&T's declarations and exhibits, it has demonstrated that it acquired plaintiffs' loan during August 2005—years before § 1641(g) went into effect. Accordingly, summary judgment for BB&T as to Count II of the Amended Complaint (ECF 14) is appropriate.

### IV. Conclusion

For the foregoing reasons, I will grant the Second Motion (ECF 89). A separate Order follows, consistent with this Memorandum.

Date: May 17, 2015                          /s/
                                                Ellen Lipton Hollander
                                                United States District Judge